IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

ANTONE LEON TAYLOR                                                                              PLAINTIFF

        v.                         Civil No. 1:13-cv-01003

SHERIFF MIKE MCGOUGH;
LT. JAMES GREER; WHITNEY FOSTER;
and JAILER COMBS                                                                               DEFENDANTS


**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

      This is a civil rights action filed *pro se* by the Plaintiff, Antone Taylor, pursuant to 42 U.S.C. § 1983.  Plaintiff is currently incarcerated at the Arkansas Department of Correction Wrightsville Unit ("ADC").

      Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2011), the Honorable Susan O. Hickey, United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation.  Currently before the Court is Defendants' Motion for Summary Judgment.  ECF No. 40.  I held a hearing on September 17, 2015 at which time I heard Plaintiff's sworn testimony in response to this Motion for Summary Judgment.  After careful consideration, the undersigned makes the following Report and Recommendation.

1.      BACKGROUND

      Plaintiff filed his Amended Complaint on May 2, 2013.  ECF No. 11.  At the time he filed his Amended Complaint, Plaintiff was incarcerated in the Ouachita County Detention Center ("OCDC"), however, his claims deal with an incarceration in the Union County Detention Center ("UCDC").   In his Amended Complaint, Plaintiff alleges Defendants Sheriff Mike McGough,

Lieutenant James Greer, and Whitney Foster, all of the UCDC, violated his constitutional rights.[1] Specifically, Plaintiff claims (1) he was denied medical care; (2) he was denied medication; and (3) he was given the wrong medication. Specifically, Plaintiff claims no one checked his vital signs and he was denied access to the hospital for "a full check up" of his blood pressure, "blood thinner levels" and mental health medications. ECF No. 11, p. 5. Plaintiff also claims a non-party jailer gave him another inmates medication. ECF No. 11, p. 5. Plaintiff makes both official and individual capacity claims against Defendants. Plaintiff does not specify what type of relief he seeks.

Defendants filed a Motion for Summary Judgment on May 26, 2015. The Court held a hearing on the Motion for Summary Judgment on September 17, 2015. At this hearing, Plaintiff provided sworn testimony as his response to Defendants' Motion for Summary Judgment.

**2.   DISCUSSION**

    A.    <u>Whitney Foster</u>

As an initial matter, I must address a procedural matter regarding Defendant Whitney Foster. Foster has never been adequately served or entered an appearance in this matter. The Court unsuccessfully attempted service on Defendant Foster on at least two separate occasions. ECF Nos. 12, 27, 48. Additionally, the Court mailed an Order to Show Cause to Defendant Foster's last known address on September 23, 2013. ECF No. 23. This Order was returned

---

[1] Plaintiff also named a Jailer Combs in his Amended Complaint, but it was later discovered Jailer Combs was deceased. Plaintiff requested Jailer Combs be dismissed from this action, and he was dismissed on August 27, 2014. *See* ECF Nos. 34, 35.

unclaimed.[2]

It is Plaintiff's responsibility to provide the Court with an address for proper service on Foster. *See Lee v. Armontrout*, 991 F.2d 487, 489 (8th Cir. 1993) ("While in forma pauperis plaintiffs should not be penalized for a marshal's failure to obtain proper service, it was [the prisoner's] responsibility to provide proper addresses for service on [the defendants]."). The Court cannot serve Foster without a proper address. Accordingly, I recommend Foster be **DISMISSED** without prejudice from this matter. Further, I recommend that Plaintiff be advised that if he is able to obtain an accurate address for service on Foster he may file a new case against her at that time.

B.  The Record

Defendants argue in their Motion for Summary Judgment there are no genuine issues of material fact regarding Plaintiff's claims. Specifically, Defendants argue: (1) Plaintiff failed to state any official capacity claims; (2) Plaintiff's claims against Defendant McGough should be dismissed because Plaintiff did not allege any direct contact with Defendant McGough; and (3) Plaintiff was not denied medical care.

At the hearing I asked Plaintiff to explain how each Defendant violated his constitutional rights. Below is a summary of his sworn testimony:

Plaintiff was incarcerated in the UCDC from December 5, 2012 through February 8, 2013. Plaintiff testified he wrote a request to Sheriff McGough when he was transferred into the UCDC requesting medications for his blood pressure, heart, and asthma, and also explaining that he needed his blood checked to determine the correct dosage for an additional

---

[2] While the January 13, 2014 summons is docketed as executed the Marshal noted he was unable to make personal contact with Foster at the facility address where the summons was left. Therefore, I have no way of knowing whether Foster ever received the summons.

medication—Coumadin. Even though Plaintiff wrote this request to Sheriff McGough, he gave it to one of the jailers. Plaintiff never had any interactions with Sheriff McGough while incarcerated at the UCDC. Plaintiff's request and grievance forms were signed by UCDC officers and not Sheriff McGough.

On December 9, 2012, Plaintiff filed a grievance regarding his medical care. Two or three days latter he was seen by Nurse Foster and a doctor. At this time, his medical history was taken and he was examined. The doctor prescribed Plaintiff medication at that visit. Plaintiff was also told he would need to be taken outside of the UCDC for treatment. Plaintiff made a request for an outside doctor visit. Plaintiff never heard back regarding this request. Also, Plaintiff's blood pressure was only checked once while he was at the UCDC.

Plaintiff did receive his medication sporadically, but not daily as needed. Additionally, Plaintiff was given the wrong medication on two occasions by a non-party jailer. This caused Plaintiff to have vomiting and permeant migraines. A medical doctor has never told Plaintiff taking the wrong medications on these two occasions caused this vomiting or migraines.

Plaintiff made his medical grievances verbally to Lt. Greer, and also Lt. Greer is the UCDC official that signed Plaintiff's medical requests and grievances. Greer told Plaintiff that he did not work in the medical department so he could not address Plaintiff's medical concerns. Further, Lt. Greer was present when Plaintiff was booked into the UCDC but another officer recorded Plaintiff's medical history.

Plaintiff had Coumadin and Seroquel with him when he was booked into the UCDC. However, Plaintiff only received these medications a few times a week instead of daily as prescribed. As a result of this sporadic medication, Plaintiff suffered chest pains which he reported

to jailers at the UCDC.

Once Plaintiff was transferred back to OCDC, the doctor there told Plaintiff his blood levels "were off" due to not receiving his medication daily and this is what caused the chest pains. Once Plaintiff began receiving his medications daily at the OCDC, he chest pains subsided. Plaintiff provided no further testimony.

Defendants submitted various records from Plaintiff's UCDC file along with their Motion for Summary Judgment. These records indicate Plaintiff was booked into the UCDC on December 5, 2012 to be held for the OCDC. ECF No. 42-1. When Plaintiff was booked into the UCDC, he reported that he took medications for his blood pressure, asthma, heart, and mental health. ECF No. 42-2. On December 8, 2012, Plaintiff filed a grievance related to his medical issues. In this grievance, Plaintiff complained his vitals were not checked as the nurse instructed. Plaintiff also notes he has "a hole in [his] heart." Lt. Greer noted in the response to the grievance that it was forwarded to medical. ECF No. 42-4. Upon Plaintiff's own admission, he was seen by Nurse Foster after submitting his request and then by the doctor on December 13, 2012. ECF No. 1. On December 14, 2012, Plaintiff was prescribed medications for his blood pressure, asthma, and depression. ECF No. 41-5.

The record here indicates the material facts are not in dispute. Plaintiff reported the medications he needed upon booking into the UCDC on December 5, 2015. On December 8, 2012, Plaintiff filed a grievance asking for medical care. Within a week of submitting his request, Plaintiff was examined by a nurse and then a doctor and prescribed medication. Neither Sheriff McGough or Lt. Greer are medical professionals, nor did they make any decisions regarding Plaintiff's medical care or interfere with any of Plaintiff's medical care once prescribed. Plaintiff

was given the wrong medication on at least one and maybe two occasions by a non-party jailer.[3]

    C.    <u>Official Capacity Claims</u>

First, Plaintiff has failed to state an official capacity claim against Defendants. Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the United States. In order to state a claim under 42 U.S.C. § 1983, plaintiff must allege that the Defendants acted under color of state law and that they violated a right secured by the Constitution. *West v. Atkins*, 487 U.S. 42 (1988); *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir.1999).

Under section 1983, a defendant may be sued in either his individual capacity, or in his official capacity, or claims may be stated against a defendant in both his individual and his official capacities. *Gorman v. Bartch,* 152 F.3d 907, 914 (8th Cir. 1998). With respect to the official capacity claims, they are "functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home,* 627 F.3d 1254, 1257 (8th Cir. 2010). In other words, Plaintiff's official capacity claims against Defendants are treated as claims against Union County. *See Murray v. Lene,* 595 F.3d 868, 873 (8th Cir. 2010).

"[I]t is well established that a municipality [or county] cannot be held liable on a *respondeat superior* theory, that is, solely because it employs a tortfeasor." *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013). To establish Union County's liability

---

[3] It is unclear from the record whether Plaintiff received his prescribed medications daily. Plaintiff claims he did not receive his Coumadin and Seroquel daily but did receive them sporadically. Plaintiff also claims this caused chest pains. Defendants did not present any evidence regarding this claim. However, this disputed fact is not material to my decision herein as Plaintiff did not allege any of the Defendants were responsible for his sporadic medication distribution.

under section 1983, "plaintiff must show that a constitutional violation was committed pursuant to an official custom, policy, or practice of the governmental entity." *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009)(citation omitted). The applicable law has been summarized as follows:

> There are two basic circumstances under which municipal liability will attach: (1) where a particular municipal policy or custom itself violates federal law, or directs an employee to do so; and (2) where a facially lawful municipal policy or custom was adopted with "deliberate indifference" to its known or obvious consequences. *Seymour v. City of Des Moines*, 519 F.3d 790, 800 (8th Cir. 2008). There need not be a finding that a municipal employee is liable in his or her individual capacity before municipal liability can attach. *Speer v. City of Wynne*, 276 F.3d 980 (8th Cir. 2002); *Parrish v. Luckie*, 963 F.2d 201, 207 (8th Cir. 1992) ("A public entity or supervisory official may be held liable under § 1983 even though no government individuals were personally liable."). Where an official policy is itself unconstitutional or directs employees to take unconstitutional action, no evidence beyond a statement of the policy and its exercise is necessary to establish § 1983 liability. *Szabla v. City of Brooklyn Park*, 486 F.3d 385, 389-90 (8th Cir. 2007).

*Id.* at 817-18.

To establish the existence of an unconstitutional policy, the Plaintiff must point to "a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Mettler v. Whiteledge*, 165 F.3d 1197, 1204 (8th Cir. 1999). Plaintiff has failed to do so here.

In *Johnson v. Douglas County Medical Dept.*, 725 F.3d 825 (8th Cir. 2013), the Court outlined the necessary elements for establishing the existence of an unconstitutional custom. It stated:

> To establish a claim for "custom" liability, [Plaintiff] must demonstrate:
>
> 1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
>
> 2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that

misconduct; and

3) That Plaintiff was injured by acts pursuant to the governmental entity's custom, *i.e.*, that the custom was the moving force behind the constitutional violation.

*Id*., 725 F.3d at 828 (citations omitted).  Plaintiff has also failed to allege any custom of Union County that violated his constitutional rights.

Accordingly, Plaintiff's official capacity claims fail as a matter of law.

D.　　Supervisory Liability

Next, Plaintiff's claims against Sheriff McGough fail as a matter of law.  A claim of deprivation of a constitutional right cannot be based on a *respondeat superior* theory of liability. *See Monell v. Department of Social Servs*, 436 U.S. 654, 694 (1978).  "[A] supervisor is not vicariously liable under 42 U.S.C. § 1983 for an employee's unconstitutional activity." *White v. Holmes*, 21 F.3d 277, 280 (8th Cir. 1994); *see also Whitson v. Stone County Jail*, 602 F.3d 920, 928 (8th Cir. 2010) ("In a § 1983 case, an official is only liable for his own misconduct and is not accountable for the misdeeds of his agents under a theory such as *respondeat superior* or supervisor liability") (internal quotations omitted); *Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997) ("general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability").  "Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights.  To establish personal liability of the supervisory defendants, [Plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights." *Clemmons v. Armontrout*, 477 F.3d 962, 967 (8th Cir. 2007) (*quoting Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006)).

Here, Plaintiff testified at the hearing that he never interacted with Sheriff McGough

8

regarding his medical claims.  There is nothing on the record to indicate Sheriff McGough was even aware Plaintiff requested or received medical care.  Accordingly, Plaintiff's claims against Sheriff McGough in his individual capacity fail as a matter of law.

Next, the record is clear that Plaintiff was not denied medical care.  Plaintiff submitted a grievance to Lt. Greer regarding medical issues.  Lt. Greer forwarded this grievance to the medical department and within one week Plaintiff was examined by a nurse and a doctor and prescribed medication.  Therefore, Plaintiff merely disagrees with the medical care he received.

It is well settled that a "prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." *Nelson v. Shuffman,* 603 F.3d 439, 449 (8th Cir. 2010) (internal quotation marks and citations omitted).  An "inmate must clear a substantial evidentiary threshold to show the prison's medical staff deliberately disregarded the inmate's needs by administering inadequate treatment." *Id.* Despite this, issues of fact exist when there is a question of whether or not medical staff exercised independent medical judgment and whether the decisions made by medical staff fell so far below the reasonable standard of care as to constitute deliberate indifference.  *See Smith v. Jenkins,* 919 F.2d 90, 93 (8th Cir. 1990).

There is no such question fact here.  Plaintiff failed to present any evidence that Lt. Greer made any decision regarding Plaintiff's medical care or interfered with Plaintiff's medical treatment in any way.  Therefore, as stated above, Lt. Greer cannot be held liable based solely on his supervisory role at the UCDC.  *See Clemmons*, 477 F.3d at 967.

Finally, with regards to Plaintiff's delayed medication claim, Plaintiff did not allege Lt. Greer played any role in that claim.  Therefore, the same analysis applies and Lt. Greer cannot be

held liable based solely on his role as the supervisor for the non-party jailer. *See Clemmons*, 477 F.3d at 967.

Further, to sustain a delay of medical care claim Plaintiff must present verifying medical evidence in the record to show the objective seriousness of the delay. *Laughlin v. Schriro,* 430 F.3d 927, 929 (8th Cir. 2005). Unless, however, the need for medical attention is obvious to a layperson in which case the plaintiff need not submit verifying medical evidence to show the detrimental effects of delay. *See Schaub v. VonWald,* 638 F.3d 905, 919 (8th Cir. 2011) (citing *Roberson v. Bradshaw*, 198 F.3d 645, 648 (8th Cir. 1999); *Aswegan v. Henry,* 49 F.3d 461, 464 (8th Cir. 1995); *see also Boyd v. Knox*, 47 F.3d 966, 969 (8th Cir. 1995) ("noting that a delay in treatment, coupled with knowledge that an inmate is suffering, can support a finding of an Eighth Amendment violation"). Here, Plaintiff did not present any verifying medical evidence to show he suffered any detrimental effects from the delay in receiving his medications.

3. **CONCLUSION**

Accordingly, I recommend Defendants' Motion for Summary Judgment (ECF No. 40) be **GRANTED** and Plaintiff's Complaint be dismissed with prejudice save for Plaintiff's claims against Defendant Whitney Foster which I recommend be dismissed without prejudice.

**The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED** this **8th day of December 2015.**

                                                  /s/ Barry A. Bryant
                                                  HON. BARRY A. BRYANT
                                                  UNITED STATES MAGISTRATE JUDGE